[Civ. No. 25219. First Dist., Div. One. Aug. 27, 1969.]

DAHL-BECK ELECTRIC CO., INC., Plaintiff, Cross-defendant and Appellant, v. GEORGE ROGGE et al., Defendants, Cross-complainants and Respondents.

Raymond H. Levy for Plaintiff, Cross-defendant and Appellant.

Crist, Crist & Griffiths, John R. Griffiths, Robert E. Schulz and Layne & Brodie for Defendants, Cross-complainants and Respondents.

MOLINARI, P. J.—Plaintiff corporation appeals from a judgment entered after a jury verdict awarding $1,215 to

defendant George Rogge, on his cross-complaint, and finding in favor of said defendant and defendant Jack Stradford on plaintiff's complaint.

## The Facts

In July 1964 plaintiff, an electrical contractor, was performing work on the premises of the University of San Francisco pursuant to contract. A representative of plaintiff telephoned Rogge and asked if Rogge had a backhoe available for trench digging. Rogge sent Stradford and the backhoe to the jobsite. The rate agreed to be paid to Rogge was $14 per hour for providing one man and the backhoe. Stradford, as the operator of the equipment, was paid by Rogge on the basis of the total time spent on the backhoe.

Stradford reported to Robert Albright, plaintiff's project foreman. Albright drove a stake and told Stradford to begin digging a trench at that point. He also told Stradford how far he should dig and to be careful because there were pipes and a water main in the area. During the process of the backhoe digging operation a four-inch water main dropped into the ditch and as a result plaintiff was required to make emergency repairs. The complaint in this action sought to recover the cost of such repairs from Stradford and Rogge.

Stradford testified that although the pipe was exposed in the process of the digging, he did not undercut it. He stated that the soil which came out from under the pipe "sloughed" away and that there was nothing he could do to prevent this sloughage. He also stated he did not use any shoring to brace the pipe.[1]

Defendant Rogge testified that he did not have a contractor's license at the time of the events in this case and that he had never had a contractor's license. He also stated that he did not "bid" on plaintiff's job and that he did not have a written contract for the work with plaintiff or the University of San Francisco. He further testified that he had done other work for plaintiff before 1964 and that he was paid on an

---

[1] Earlier Stradford hit an abandoned pipeline and reported the incident to Albright who told him to dig under it. Also at an earlier point, at the suggestion of the building inspector, Albright apparently had laborers shore up the water main. There is some confusion in the testimony of Mr. Ray, the University of San Francisco building inspector. Initially he stated that he only instructed Stradford to shore the pipe that fell. On cross-examination he recalled the earlier warning and shoring. Ray also testified that it was his normal practice to inform the *superintendent* when shoring was needed.

hourly basis. Before the incident of the falling pipe, Rogge was never on the site of the work involved in this litigation.

Throughout the period that Stradford was operating the backhoe he regularly reported to Albright for directions as to where he should dig and at the close of each day's work Albright would inform Stradford whether or not he would be needed on the succeeding day. Albright also gave other detailed instructions to Stradford about the course of the work.

Albright saw the exposed water pipe on the morning of the day it fell and warned Stradford to stay away from it. However, he testified that he did not return to the scene of the excavation until after the pipe fell into the ditch.

Plaintiff did not pay for the work performed, but brought an action against Rogge and Stradford alleging that the excavating work was negligently performed and seeking repair expenses in the amount of $6,615.17. Rogge and Stradford answered denying that they were negligent, and Rogge cross-complained for $1,215 for services performed.

## Contentions

We find it difficult to identify plaintiff's arguments. Plaintiff does not directly maintain that there was such substantial evidence of negligence on the part of Stradford as to require a verdict against Stradford and Rogge as a matter of law. However, plaintiff does discuss all the evidence relating to liability in great detail and states it is unable to comprehend why the jury did not return a verdict against Rogge and Stradford. What plaintiff is apparently contending is that Rogge was an independent contractor as a matter of law, and that the court erred in submitting this issue to the jury; that Stradford was negligent as a matter of law, and that such negligence was imputed to his employer, Rogge; and that Rogge, as an unlicensed contractor, could not maintain an action for his work. Plaintiff also argues that the court erred in refusing to admit into evidence certain reports made by Albright after the accident. We observe, however, that plaintiff's chief contentions on this appeal relate to alleged errors in instructions.

## Negligence

■ Plaintiff's complaint is predicated upon the negligence of Rogge and Stradford in the performance of the excavation work for which they were hired. Under this cause of action the status of Rogge and Stradford, whether independent contractors, agents or employees, is not significant

since, if their negligence proximately contributed to the damage complained of, they would be liable to plaintiff in any such capacity. In this regard, we particularly note that if Stradford, as the subagent of Rogge, were negligent, that negligence would be imputed to Rogge, and Rogge, in turn, would be liable therefor to plaintiff. (See *Transcontinental & Western Air* v. *Bank of America*, 46 Cal.App.2d 708, 713 [116 P.2d 791]; *Smith* v. *National Bank of D.O. Mills & Co.*, 191 F. 226; see Civ. Code, § 2349.) We also observe here that Stradford, as the lawfully appointed subagent of Rogge, represented plaintiff, as principal, in like manner with Rogge. (See *Towt* v. *Pope*, 168 Cal.App.2d 520, 531 [336 P.2d 276]; *Malloy* v. *Fong*, 37 Cal.2d 356, 372-375 [232 P.2d 241]; Civ. Code, § 2351.)

The jury in the present case was instructed on negligence, contributory negligence, and proximate cause. The jury returned a verdict in favor of Rogge and Stradford. This verdict implies either that Rogge and Stradford were not negligent, or, if they were, that plaintiff was contributorily negligent and that such negligence was a proximate cause of the damage claimed to have been suffered. Either finding is supported by substantial evidence in the record.

## Status of Defendant Rogge

 The question whether Rogge was an independent contractor was submitted to the jury with detailed instructions. Plaintiff contends that the question should have been decided as a matter of law because the uncontradicted evidence indicated that Rogge was an independent contractor.

Before evaluating this claim we note that Rogge's status is crucial to his recovery on the cross-complaint. Any person who meets the definition of a contractor as set out in Business and Professions Code section 7026[2] may not bring an action for compensation unless he is duly licensed under the laws of the state. (Bus. & Prof. Code, § 7031.) Defendant Rogge

---

[2]Contractor is defined in Business and Professions Code section 7026 as follows: ''The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person, who undertakes to or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith. The term contractor includes subcontractor and specialty contractor.''

admittedly was not licensed. The requirement of a license does not apply, however, ''to any person who engages in the activities regulated, as an employee with wages as his sole compensation.'' (Bus. & Prof. Code, § 7053.)

■ Turning to plaintiff's basic contention, we observe that it is established that ''. . . where but one inference can reasonably be drawn from the evidence . . . the question of whether one is an employee or an independent contractor becomes one of law for the court. [.Citation.]'' (*Burlingham* v. *Gray*, 22 Cal.2d 87, 100 [137 P.2d 9]; *Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com.*, 55 Cal.App.2d 234, 238 [130 P.2d 146]; *Perguica* v. *Industrial Acc. Com.*, 29 Cal.2d 857, 859 [179 P.2d 812]; *Hardin* v. *Elvitsky*, 232 Cal.App.2d 357, 373 [42 Cal.Rptr. 748].) ■ It is equally well established, however, that ''In order to establish a fact as a matter of law the state of the evidence must be such that no other conclusion is legally deducible therefrom. [Citations.]'' (*Hardin* v. *Elvitsky, supra.*) ■ Also of particular significance to the disposition of plaintiff's contention is the corollary rule that where there is a conflict in the evidence from which either conclusion could be reached as to the status of the parties, the question must be submitted to the jury. (*Yucaipa Farmers etc. Assn.* v. *Industrial Acc. Com., supra,* at p. 238; *Hardin* v. *Elvitsky, supra,* at p. 373 and cases there cited; *Rodoni* v. *Harbor Engineers,* 191 Cal.App.2d 560, 562 [12 Cal.Rptr. 924]; *Jackson* v. *Pancake,* 266 Cal.App.2d 307, 311-312 [72 Cal.Rptr. 111]; Rest.2d Agency, § 220, com. c.) This rule is clearly applicable to cases revolving around the disputed right of a party to bring suit under the provisions of Business and Professions Code section 7031. (See *Jackson* v. *Pancake, supra*; *Rodoni* v. *Harbor Engineers, supra; Cargill* v. *Achziger,* 165 Cal.App.2d 220, 222 [331 P.2d 774].)

■ Adverting to the argument of plaintiff in light of the foregoing principles, we conclude that his basic premise must be rejected. The evidence was not clear and uncontradicted that Rogge was an independent contractor. To the contrary, there was substantial evidence that Stradford's work was very much under the control and direction of plaintiff's project foreman. ■ As we recently summarized the applicable law: ''The determination of whether the status of an employee or that of an independent contractor exists is governed primarily by the right of control which rests in the employer, rather than by his actual exercise of control; and where no express agreement is shown as to the right of the

claimed employer to control the mode and manner of doing the work, the existence or nonexistence of the right must be determined by reasonable inferences drawn from the circumstances shown, and is a question for the jury.'' (*Hardin* v. *Elvisky, supra,* 232 Cal.App.2d 357, 373; see *Burlingham* v. *Gray, supra,* 22 Cal.2d 87, 99, 100.) In the instant case there was direct testimony that plaintiff's representative told Stradford where to dig, when to come to work and what degree of care was required. There was no evidence of any supervision by defendant Rogge. From such evidence the jury was entitled to find that Stradford was an employee of plaintiff and under plaintiff's direct control. Under the usual appellate rules, this finding will not be disturbed on appeal. (See *Rodoni* v. *Harbor Engineers, supra,* 191 Cal.App.2d 560, 562.)

The circumstance that Rogge furnished the backhoe and its operator, Stradford, does not make Rogge a contractor as a matter of law. (See the following cases where the plaintiff was held to be an employee: *Powell* v. *Berg,* 99 Cal.App.2d 353, 354, 355 [221 P.2d 743], where the plaintiff performed services, advanced money and furnished a truck; *Malvich* v. *Rockwell,* 91 Cal.App.2d 463, 466-467 [205 P.2d 389], where the plaintiff agreed to build a wharf for the defendant on an hourly basis and for that purpose bought materials and hired laborers; *Andrew* v. *Conner,* 101 Cal.App.2d 621, 623 [225 P.2d 943], where the lienor's sole participation was rental of men and equipment to lienee who supervised, directed, and controlled the work; *Cargill* v. *Achziger, supra,* 165 Cal.App. 2d 220, 222-223, where the plaintiff furnished labor and materials in grading and paving on the defendant's real property; and see *Rodoni* v. *Harbor Engineers, supra,* 191 Cal.App.2d 560, 562-563.) *Rodoni* is strikingly similar to the present case. There the trial court found that the plaintiff was an employee rather than a contractor where the plaintiff testified that he was in the business of renting tractors and earthmoving equipment and hiring out drivers. Payment for equipment and men was made on an hourly basis and the plaintiff had nothing to do with the supervision of the work. (Pp. 561, 562-563.) The appellate court concluded that there was substantial evidence to support the finding, and that evidence that the plaintiff made a profit and listed himself as a ''contractor'' only raised a conflict in the evidence. (P. 563; see also *Contractors Dump Truck Service, Inc.* v. *Gregg Constr. Co.,* 237 Cal.App.2d 1, 7 [46 Cal.Rptr. 738]; *Borello*

v. *Eichler Homes, Inc.,* 221 Cal.App.2d 487, 498 [34 Cal.Rptr. 648].)

In the instant case the court quite properly submitted the entire issue of the status of the parties to the jury for its disposition.

## The Work Reports

 Handwritten reports of the falling of the pipe were prepared by Albright. The trial court refused to admit these reports into evidence when counsel objected on the ground that they included hearsay material. Plaintiff argues that it was error to exclude these reports but cites no authority for his position.[3] "When a point is merely suggested by appellant's counsel, with no supporting argument or authority, it will be deemed to be without foundation and requires no discussion. [Citation.]" (*Thompson* v. *Keckler,* 228 Cal.App.2d 199, 213 [39 Cal.Rptr. 267]; *In re Steiner,* 134 Cal.App.2d 391, 399 [285 P.2d 972].) We do observe, however, that section 1271 of the Evidence Code, which allows an exception to the hearsay rule for business records, requires the judge to find that the sources of information and the method and time of preparation of the record "were such as to indicate its trustworthiness." In the instant case Albright testified that he was not on the scene when the pipe fell into the trench which Stradford was digging. Consequently, he had no opportunity to actually observe what happened. Such a report is similar to an accident report which is not admissible as a business record because it is made on statements of participants and bystanders and measurements, deductions and conclusions of the person compiling the report. (*Behr* v. *County of Santa Cruz,* 172 Cal.App.2d 697, 705 [342 P.2d 987] [investigative report re origin of fire]; *Hoel* v. *City of Los Angeles,* 136 Cal.App.2d 295, 309-310 [288 P.2d 989] [accident report by police officers].) The court properly excluded the evidence.

## Errors in Instructions

Plaintiff contends that the only explanation for the jury's verdict is that the instructions were ambiguous or conflicting. The several instructions claimed by him to be deficient are discussed below.

---

[3]Plaintiff gives no indication why these reports may be of value. Respondents suggest that they were offered to prove damages rather than liability and since liability was decided adversely to plaintiff there was no error in refusing to admit them. There is strong credence for this suggestion since, in the opening brief, plaintiff cites the error under the heading "Damages."

 Plaintiff objects to the following instruction: "You are instructed that if you find from the instructions previously given you that the defendant Rogge was required to have a contractor's license, nevertheless, his failure to have one will not bar him from offsetting as a defense, if you find that he was entitled to an offset, such sums that would otherwise be due him for the work done." Plaintiff claims that this instruction is in conflict with an instruction that told the jury that a contractor cannot bring an action in this state for the collection of compensation for the performance of any act or contract while engaged in the business of a contractor without alleging and proving that he was a duly licensed contractor. We cannot agree because both instructions reflect correct statements of the law. "It is well settled that the failure to obtain a required contractor's license will bar the contractor from recovering for his work in an action brought by him, but will not bar him from offsetting as a defense sums which would otherwise be due him under the illegal contract." (*S & Q Constr. Co.* v. *Palma Ceia Dev. Organization,* 179 Cal.App.2d 364, 367 [3 Cal.Rptr. 690] ; see *Steinwinter* v. *Maxwell,* 183 Cal.App.2d 34, 38-39 [6 Cal.Rptr. 496] ; *Culbertson* v. *Cizek,* 225 Cal.App.2d 451, 473 [37 Cal.Rptr. 548].)

 Plaintiff claims error in the following instruction: "There is, however, an exception to the foregoing license requirement. The license requirement does not apply to any person who furnishes or rents to another equipment with an operator at an agreed price of so much an hour as his sole compensation and the operator remains under the general and immediate supervision, direction and control of the party renting the manned equipment." The basis of the claimed error is that "hourly compensation is not the test" for determining when an individual must be a licensed contractor. Plaintiff cites no authority for his assertion[4] which must, in any event, be rejected. We observe that according to the provisions of Business and Professions Code section 7053, compensation in wages clearly is the most important test in ascertaining whether an individual is excepted from the licensing requirements. According to that section "any person who engages in the activities herein regulated, as an employee with

[4]Plaintiff cites no specific cases for his proposition, but a careful reading of his brief indicates he might be relying on *Skipper* v. *Gilbert J. Martin Constr. Co.,* 156 Cal.App.2d 82 [318 P.2d 732]. However, that case deals with an individual who did *not* come within the exception for an employee on wages. (See p. 85.)

wages as his sole compensation." need not be licensed as a contractor. We also observe that such cases as *Rodoni* and *Borello, supra,* are clear authority for this instruction which accurately states the applicable law where a person rents or furnishes equipment on an hourly basis as his sole compensation, and has nothing to do with the supervision, direction and control of the work being performed by the equipment. Plaintiff also claims that the subject instruction is confusing because it is impossible to ascertain who is "renting" the equipment. Actually, any real confusion seems dissipated by reading the entire instruction. ▮ And, of course, it is well established that a judgment will not be reversed for error which can be found only by detaching a portion of an instruction from context.

▮ The next instruction alleged to be erroneous reads as follows: "If, however, you find that Mr. Rogge was an agent of Dahl-Beck Electric Company, acting at all times under the latter's supervision, direction and control, as to the detail, method and progress of the work, with wages as his whole compensation, then the license requirement is not applicable, and you may allow recovery on the defendant's cross-complaint, if you find that he is otherwise entitled to recover from the plaintiff." Plaintiff objects to this instruction because Rogge was personally never on the jobsite and did not work under the supervision of plaintiff. Apparently plaintiff believes the instruction is therefore confusing. No authority of any sort is cited to support plaintiff's contention. The instruction is a correct expression of the law. It clearly states that if the jury found Rogge to be plaintiff's agent rather than a contractor, Rogge was entitled to recover if he proved the allegations and items of his cross-complaint.

The court gave an instruction[5] on agency which plaintiff claims has no application to the case and should never have been given. However, the record discloses that this instruction was proposed by plaintiff and was given as proposed.

▮ The jury was instructed on the subject of culpable negligence of an employee as follows: "You are instructed

---

[5]The instruction reads as follows: "You are instructed that it is not necessary that a particular act or failure to act be expressly authorized by the principal to bring it within the scope of the agent's authority. Such conduct is within the scope of the agent's authority if it occurs while the agent is engaged in the duties which he was employed to perform and relates to those duties. Conduct for the benefit of the principal which is incidental to, customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the agent's authority."

that Section 2865 of the Labor Code provides as follows: an employee who is guilty of a culpable degree of negligence is liable to his employer for the damages thereby caused to the employer.''[6] Plaintiff particularly objects to this instruction because the court refused to give two additional instructions defining ''culpable negligence.'' Although the refused instructions do not appear in the clerk's transcript among the instructions which were requested by plaintiff and refused by the court, the parties agreed that the instructions hereinafter referred to were submitted to and refused by the trial court, and that for purposes of this appeal we may consider them as if they were included in the clerk's transcript.

The first of these two additional instructions has nothing to do with the definition of ''culpable negligence.'' It reads as follows: ''You are instructed that if [sic] should find that Defendant Rogge and by the same token Stradford, are not independent contractors, then, and in that event, you are instructed that if you find they are guilty of negligence, they are nonetheless liable to Plaintiff for the damage caused to Plaintiff.'' This instruction merely told the jury that even if Rogge and Stradford were not independent contractors they would be liable to plaintiff if they were negligent. It is not a correct expression of the law since it does not include the essential element of proximate cause. The subject of this instruction, morever, was aptly covered by other instructions which advised the jury that if Rogge and Stradford were negligent and their negligence was the proximate cause of damage to plaintiff, the latter, if he was not guilty of contributory negligence which was a proximate cause of the damage, was entitled to recover the damages proved by it by a preponderance of the evidence. There was no error, therefore, in refusing to give this instruction.

The other instruction offered by plaintiff reads as follows: ''You are instructed that culpable negligence is: 'Failure to exercise that degree of care rendered appropriate by the particular circumstances, and which a man of ordinary prudence in the same situation and with equal experience would not have omitted.' [Citation.] In other words, culpable negligence is ordinary negligence as heretofore defined by me to you.''

---

[6]The reporter's transcript indicates that this instruction was submitted by plaintiff and modified by the trial court.

Plaintiff maintains that the trial court should have defined "culpable negligence" pursuant to the definition submitted by him in order to obviate any possible confusion which might cause the jury to decide that "culpable negligence" was a type of negligence different from that which the trial judge had already defined to the jury. We do not apprehend any potential confusion since the definition of "culpable" offered by plaintiff merely refers to ordinary care concerning which the trial court gave detailed instructions. The proposed instruction simply equates culpable negligence with ordinary negligence. It did not add anything to the law as included in the other instructions.

Although we conclude that the requested instruction defining culpable negligence was extraneous, a thorough consideration of the meaning of the provisions of Labor Code section 2865 will further clarify our reasons for this conclusion. In this connection we note that certain provisions of the Labor Code indicate that there may be a distinction between the obligation imposed upon an agent, and those imposed upon an employee under the statutes passed for the benefit or protection of employees[7] ▮▮▮. An agent has the duty to use reasonable skill and diligence and if he violates this duty he is liable for any loss which his principal may sustain as the result of his negligence. (*Poile* v. *Stockton Merchants Assn.*, 176 Cal.App.2d 100, 104 [1 Cal.Rptr. 284, 76 A.L.R.2d 1151] ; *Leland* v. *Oliver*, 82 Cal.App. 474, 479 [255 P. 775].) Apropos Labor Code section 2865, no case has been found or cited which defines "culpable degree of negligence" as it is set out in this section. (See *Division of Labor Law Enforcement* v. *Barnes*, 205 Cal.App.2d 337, 349 [23 Cal.Rptr. 55], where the section is discussed but the term "culpable negligence" is not defined.) We observe that Labor Code section 2854 provides that "One who, for a good consideration, agrees to serve another, shall perform the service, and shall use ordinary care and diligence therein, so long as he is thus employed," and that Labor Code section 2850 provides that a gratuitous

[7] The same person may be simultaneously both an agent and an employee. (*Ingle* v. *Bay Cities Transit Co.*, 72 Cal.App.2d 283, 286 [164 P.2d 508].) The words, however, are not wholly synonymous. "An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) Although both an agent and employee work for another under an express or implied employment, the work of an employee is inferior to that done by an agent. Both work for the principal, but the agent works not only for but in place of the principal. (*People* v. *Treadwell*, 69 Cal. 226, 236 [10 P. 502].)

employee "shall use at least slight care and diligence" in the performance of the service. (See *Burke* v. *Zanes,* 193 Cal.App. 2d 773, 780 [14 Cal.Rptr. 619].) We note, further, with respect to an employee who agrees to serve another for a good consideration, that Labor Code section 2858 provides that "An employee is bound to exercise a reasonable degree of skill, unless his employer has notice, before employing him, of his want of skill," and that section 2859 of the same code provides that "An employee is always bound to use such skill as he possesses, so far as the same is required, for the service specified."

 In the light of the foregoing we interpret the words "culpable degree of negligence," as used in Labor Code section 2865, to mean the violation or disregard of the duty which an employee owes to his employer pursuant to the obligations imposed by the provisions of the Labor Code. (§§ 2850-2865.) Thus, in the case of a "gratuitous employee" he is guilty of a "culpable *degree* of negligence" when he is guilty of gross negligence (italics added; Lab. Code, § 2850; see *Burke* v. *Zanes, supra,* 193 Cal.App.2d 773, 780) ; and in a case of an employee for a consideration, he is guilty of a "culpable *degree* of negligence" when he fails to use ordinary care (italics added; Lab. Code, § 2854), consistent with the degree of skill required and to be used as provided in Labor Code sections 2858 and 2859. (See *Thomas Fruit Co.* v. *Start,* 107 Cal. 206 [40 P. 336], construing former Civ. Code, §§ 1983 and 1984, upon which Lab. Code, §§ 2858 and 2859, respectively, are based.) In our view the word "culpable" is used in its dictionary definition, that is, "conducive to accident, loss, or disaster" (Webster's 3d New International Dictionary) and in the context of active participation in the wrongful act. (See *Towt* v. *Pope, supra,* 168 Cal.App.2d 520, 529, 530.) In the instant case, therefore, since Rogge and Stradford were employees for a consideration they were bound to exercise ordinary care and diligence in the service they were engaged to perform for plaintiff. That degree of care was aptly defined in the court's instructions.

Plaintiff also objects to the subject instruction because the identity of "his employer" is not clear. We see no ambiguity, and observe that the jurors must be credited with average understanding in a case such as this where the instructions as a whole were clear, correct and comprehensive. (*Erickson* v. *Water Land Truck Lines,* 119 Cal.App.2d 210, 212-213 [259 P.2d 484].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied September 22, 1969, and appellant's petition for a hearing by the Supreme Court was denied October 22, 1969.